UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TODD H. CHAMPION,**<br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12056** |
| **COX OPERATING, L.L.C., ET AL.,**<br>     **Defendants** | **SECTION: "E" (1)** |

### ORDER AND REASONS

On December 4, 2020, Plaintiff Todd H. Champion filed a motion in limine to exclude or limit the testimony and opinions of Dr. Christopher E. Cenac, Sr.[1] For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

Plaintiff alleges, on August 9, 2018, he was working aboard an offshore production platform owned and controlled by Defendants Cox Operating, L.L.C., Cox Oil Offshore, L.L.C., Cox Oil GOM, L.L.C., and Cox Oil, L.L.C. (the "Cox Defendants") in Ship Shoal Block 181, approximately 65 miles south of New Orleans, Louisiana.[2] Plaintiff alleges he was stepping down from a landing onto the platform's steps while holding the landing's handrail with his left hand when his foot got caught in the landing's metal grating, causing him to fall forward.[3] Plaintiff alleges he reached for hand railings to the right and left of the steps leading from the landing to the platform deck, but there were no handrails on either side of the steps.[4] As a result, Plaintiff's left knee allegedly struck the metal grating

---

[1] R. Doc. 39. Defendants filed an opposition. R. Doc. 41. Plaintiff filed a reply. R. Doc. 46.
[2] R. Doc. 1 at ¶ 3.
[3] *Id.* at ¶¶ 5-6.
[4] *Id.* at 7.

1

when he fell to the deck below.[5] He "suffered an open patella fracture and severed patellar tendon as well as additional significant left knee joint damage."[6]

Plaintiff brings claims of negligence against the Cox defendants for (1) failure to ensure that the stairway was reasonably safe for its intended use, and (2) liability as the platform owners for damages caused by a vice or defect in the construction of the stairway.[7]

The Cox Defendants disclosed Dr. Christopher E. Cenac, Sr. who they will call to testify "as an expert in orthopedic surgery and [based on] his independent examination of Plaintiff's medical records, both pre- and post- claimed accident and prognosis."[8] The Cox Defendants concede Dr. Cenac did not personally examine Plaintiff "due to the timing of the Covid pandemic, this Court's deadlines, and the fact that Plaintiff's treating physicians had already placed Plaintiff at maximum medical improvement."[9] Plaintiff brings the instant motion in limine to exclude or limit Dr. Cenac's testimony and opinions because they are beyond his expertise under Rule 702, overly prejudicial under Rule 403, or irrelevant and inadmissible under Rules 401, 402, and 702.

## **STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

---

[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 9.
[7] *Id.* at ¶¶ 12-13.
[8] R. Doc. 23 at ¶ 18.
[9] R. Doc. 41 at 3.

product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[10]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[11] provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether expert testimony is both relevant and reliable.[12] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[13]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[14] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[15] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[16]

The Supreme Court has cautioned the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the

---

[10] FED. R. EVID. 702.
[11] 509 U.S. 579 (1993).
[12] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).
[13] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[14] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[15] *Daubert*, 509 U.S. at 592–96.
[16] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).

nature of the issue, the expert's particular expertise, and the subject of his testimony."[17] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[18] The district court is offered broad latitude in making expert testimony determinations.[19]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[20] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[21] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[22] The Court is not concerned with whether the opinion is correct but whether the preponderance of the evidence establishes that the opinion is reliable.[23] "It is the role of the adversarial system, not the court, to highlight weak evidence."[24]

## LAW AND ANALYSIS

**I.    Dr. Cenac's sixth, eighth, and ninth opinions are not admissible under Rule 702.**

Plaintiff argues Dr. Cenac is not qualified under rule 702[25] to offer his sixth, eighth, and ninth opinions, which are:

> 6. The Root Cause Analysis report confirmed that Mr. Champion was carrying a 40 pound tool bag and a 40 pound duffel bag at the time of the

---

[17] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[18] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[19] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[20] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[21] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[22] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[23] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[24] *Primrose*, 382 F.3d at 562.
[25] Fed. R. Evid. Rule 702.

incident. This caused a shift in his center of gravity. The abnormal foot placement in conjunction with the pre-existing mechanical dysfunction from the quadriceps atrophy caused the stumble on the steps because he could not pick his foot up enough to maintain 3 point contact.

8. Mr. Champion is personally responsible for the incident and all treatment that he received after 08/09/2018 because he elected to attempt to descend the stairway with an extra 80 pounds of weight with a known dysfunctional right lower extremity. He is personally responsible for the prolonged medical care that he received post-incident.

9. Mr. Champion is personally responsible for any future medical treatment of his lumbar spine and right lower extremity.[26]

Plaintiff argues Dr. Cenac's expertise as an orthopedic surgeon does not qualify him to render opinions in the areas of "accident reconstruction, biomechanics, physics, kinetics, or anything of the sort."[27] With respect to the sixth and eighth opinions, Plaintiff argues Dr. Cenac is not qualified and did not "analyze very specific biomechanical factors, including weights, foot placement, and body movement" to draw reliable conclusions with respect to the accident's causation.[28] With respect to the ninth opinion, Plaintiff argues this opinion is derived from the sixth and eighth opinions regarding the accident's causation, which is beyond Dr. Cenac's expertise.[29]

With respect to the sixth opinion, the Cox Defendants argue Dr. Cenac's 42 years of experience as an orthopedic surgeon qualify him "to opine as to how carrying weight on a person's back affects the function of the body's extremities . . . [and] to address the fact that in his medical opinion Mr. Champion's prior diagnoses of osteoarthritis of the right knee joint, osteopenia, and quadriceps atrophy of the right leg would cause him to have physical limitations. . . "[30] With respect to the eighth opinion, the Cox Defendants

---

[26] R. Doc. 39-4 at 8-9.
[27] R. Doc. 39-1 at 5.
[28] *Id.* at 6.
[29] *Id.* at 7.
[30] R. Doc. 41 at 16.

point to the same expertise and argue it is within the scope of Dr. Cenac's medical opinion that "Mr. Champion 'is personally responsible' for the incident because he elected to descend a staircase, carrying excessive weight with a known dysfunctional right lower extremity . . ."[31] With respect to the ninth opinion, the Cox Defendants argue Dr. Cenac's medical opinion that Plaintiff's medically-documented behavior, unusually prolonged medical treatment, and other complications "had a direct and adverse effect on his ability to recover from his injury."[32]

Dr. Cenac is not a biomechanical engineer or an accident reconstruction expert. He lacks the qualifications and experience to offer his sixth opinion that the shift in Plaintiff's center of gravity, combined with other mechanical dysfunction, caused the accident. Although it may exist elsewhere, Dr. Cenac provided no basis for his statement that Plaintiff had an "abnormal foot placement" on the steps. Dr. Cenac is not qualified by training or experience to give his sixth opinion, and he has failed to provide sufficient facts or data on which it is based. His opinion is not relevant and reliable and would not be helpful to the jury. As a result, his testimony regarding his sixth opinion is excluded.

Dr. Cenac's eighth and ninth opinions are that Plaintiff is "responsible for the incident and all medical care" he received. The trier of fact in this case, the jury, will be capable of making this determination without expert testimony. As a result, Dr. Cenac's testimony will not be helpful to them. Dr. Cenac's testimony regarding his eighth and ninth opinions is excluded.

---

[31] *Id.* at 23.
[32] *Id.* at 24.

## II. Testimony regarding Dr. Cenac's first and second opinions is excluded without objection.

Plaintiff points out that the Cox Defendants do not object to the exclusion of testimony regarding Dr. Cenac's first and second opinions, which are:

> 1. Mr. Champion was not truthful to multiple healthcare providers about his past medical history.
>
> 2. The patient was not truthful on pre-employment questionnaires.[33]

The Cox Defendants do not contest this portion of the Motion in Limine, as they represent in their opposition to the motion:

> For purposes of this Motion only, Cox will concede that it will not seek to have Dr. Cenac testify as to the opinions enumerated as opinions 1 and 2 in his report Record Doc. 39-4, pp. 6-7 regarding Plaintiff's lack of truthfulness as to his past medical history and pre-employment questionnaires. Cox does not concede, however, that it is not entitled to question Plaintiff, as well as other of Plaintiff's medical providers at trial, regarding those issues/facts and Cox reserves its right to do so at the trial of this matter.[34]

Dr. Cenac will not be allowed to testify that Plaintiff was not truthful to multiple healthcare providers about his past medical history or that Plaintiff was not truthful on pre-employment questionnaires.

## III. Testimony Regarding Dr. Cenac's third, fourth, fifth, and seventh opinions is admissible in part.

Plaintiff seeks to exclude testimony regarding Dr. Cenac's third, fourth, fifth, and seventh opinions, which are:

> 3. The patient demonstrated repetitive noncompliant behavior with treatment recommendations by multiple healthcare providers.
>
> 4. The patient exhibited marked repetitive self-destructive behavior during the course of his medical evaluation and treatment program.

---

[33] R. Doc. 39-4 at 6-7.
[34] R. Doc. 41-1, n. 2.

7

> 5. This patient had a documented history that predated the incident of osteoarthritis of the right knee joint, osteopenia, and quadriceps atrophy of the right leg. These pre-existing diagnoses negatively impacted normal mechanical function of the right lower extremity.
>
> 7. The pre-existing diagnoses made by Dr. Stephen Alsip of Vitamin D deficiency, Vitamin B12 deficiency, malaise fatigue, obesity, gastric reflux disease, elevated cholesterol, and renal insufficiency all significantly impacted wound healing in this patient. These diagnoses along with the patient's chronic alcohol abuse directly prolonged his treatment regimen.[35]

Plaintiff argues these opinions must be excluded because they are irrelevant or because their probative value is substantially outweighed by the danger of unfair prejudice. Plaintiff argues opinions 3 and 4, related to Plaintiff's noncompliant behavior, are overly prejudicial because they unfairly "impugn Plaintiff's character."[36] Plaintiff argues opinions 5 and 7, related to Plaintiff's medical history, are unsupported and "purely speculative."[37]

Dr. Cenac is a graduate of the Louisiana State University School of Medicine's class of 1971 and has been board certified by the American Board of Orthopedic Surgeons since 1978.[38] His private practice in Houma, Louisiana is "limited to orthopedic surgery."[39] He has been qualified in countless cases, both federal and state courts, as an expert in orthopedic surgery in "Louisiana, Texas, Mississippi, Tennessee, North Carolina, Alabama and Florida."[40]

Dr. Cenac did not have the opportunity to personally conduct a medical evaluation of Plaintiff. His expert report discloses that his opinions are based on his examination of

---

[35] R. Doc. 39-4 at 7-9.
[36] *Id*. at 10.
[37] *Id*. at 11.
[38] R. Doc. 39-2 at 1.
[39] *Id*. at 2.
[40] *Id*. at 2.

Plaintiff's "multiple medical records and diagnostic studies,"[41] including the medical records of Immediate Care of the South, Plaintiff's primary care physician Dr. Alan Shain, Our Lady of Lourdes Regional Medical Center, the Industrial Clinic of Mobile, P.C., Bourgeois Medical Clinic, Thibodaux Regional Medical Center, Dr. Jason Higgins, Plaintiff's physician Dr. Roger M. Seltzer, Plaintiff's infectious disease physician Dr. Steven Alsip, and Plaintiff's plastic surgeon Dr. Christopher A. Park, and Encore Rehabilitation, Inc.[42] Dr. Cenac also reviewed Plaintiff's employment records from OMS, W-Industries, and the Cox Defendants.[43] The Plaintiff does not seek to exclude Dr. Cenac's testimony based on his inability to personally examine the Plaintiff because of COVID-19 concerns.

Dr. Cenac's knowledge and experience qualify him to testify with respect to Plaintiff's medical history, his non-compliant behavior during his course of treatment, his pre-existing conditions and how they affected his physical function, his "osteoarthritis of the right knee joint, osteopenia, and quadriceps atrophy of the right leg," and how his pre-existing conditions affected the healing of his wounds[44] His opinions are relevant and reliable and their probative value is not exceeded by the risk of unfair prejudice. Dr. Cenac will be allowed to testify at trial with respect to these opinions; provided, Dr. Cenac will not be allowed to testify that "patient's chronic alcohol abuse directly prolonged his treatment regimen"[45] or to characterize Plaintiff generally as an untruthful or dishonest person.[46]

---

[41] R. Doc. 39-4 at 1.
[42] *Id.* at 1-6.
[43] *Id.* at 2 and 6.
[44] R. Doc. 39-4 at 6-9.
[45] *Id.* at 9 (opinion 7).
[46] *Id.* at 6-7 (opinions 1 and 2).

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[47] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[48] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[49] At trial, Plaintiff will have the opportunity to conduct a vigorous cross-examination of Dr. Cenac to identify weaknesses in his testimony and to attack his credibility.[50]

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion in Limine to Exclude and/or Limit the Testimony of Christopher E. Cenac, Sr., M.D. is **GRANTED IN PART** and **DENIED IN PART**.[51]

Dr. Cenac will not be allowed to testify with respect to opinions 1, 2, 6, 8, and 9 in his expert report.

Dr. Cenac will be allowed to testify with respect to opinions 3, 4, 5, and 7 in his expert report; provided, Dr. Cenac will not be allowed to testify that "patient's chronic

---

[47] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[48] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[49] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[50] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("while exercising its role as a gate-keeper, a trial court must take care not to transform a Daubert hearing into a trial on the merits.").
[51] R. Doc. 39.

alcohol abuse directly prolonged his treatment regimen"[52] or to characterize Plaintiff generally as an untruthful or dishonest person.

Counsel for the Cox Defendants will be responsible for fully informing Dr. Cenac of the limits of his testimony on direct and cross-examination.

**New Orleans, Louisiana, this 4th day of March, 2021.**

                                                **SUSIE MORGAN**
                                **UNITED STATES DISTRICT JUDGE**

---

[52] *Id.* at 9 (opinion 7).